UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **FRED O'NEILL,** as conservator of **SHERRY A. KERSKI**, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>**RIPLEY COUNTY, MISSOURI; WAYNE COUNTY, MISSOURI; MIKE BARTON; DEAN FINCH; CHARLES MAYS; JOEY BRUENER; TYLER RASBERRY,** )<br>)<br>Defendants. ) | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. The claims asserted herein arise under 42 U.S.C. § 1983, 1985, 1986 &1988, the United States Constitution, Mo. Rev. Stat. § 537.080, and Missouri common law.  Jurisdiction over Plaintiff's Federal claims is conferred by 28 U.S.C. § 1331.  Supplemental jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. § 1367.

2. Venue is proper under 42 U.S.C. § 1391 (b), in that one or more of the Defendants reside in the Eastern District of Missouri, and Plaintiff's claims for relief arose in this district.

3. Plaintiff is the duly appointed conservator of Sherry A. Kerski ("*Sherry*").

4. Sherry is the natural and legal mother of the deceased Destin Joseph Pallotta ("*Destin*"). Sherry is a member of that class of individuals entitled to sue for damages under Mo. Rev. Stat. § 537.080.1(1).

5. At all times relevant hereto, Defendants Mike Barton, Charles Mays and Joey Bruener were law enforcement officers employed by Ripley County, Missouri, acting under the color of law and within the scope of their employment with, and for the benefit of, Ripley County.

6. At all times relevant hereto, Defendant Mike Barton was the Sheriff of Ripley County.

7. At all times relevant hereto, Defendants Dean Finch and Tyler Rasberry were law enforcement officers employed by Wayne County, Missouri, acting under the color of law and within the scope of their employment with Wayne County, and for the benefit of, Wayne County.

8. At all material times, Defendants acted under color of the laws, statutes, ordinances and regulations of the State of Missouri.

9. Defendants Mike Barton, Dean Finch, Charles Mays, Joey Bruener, and Tyler Rasberry are sued in their individual, official and representative capacities.

10. On or about June 27, 2018, Defendant Ripley County's policies provided:

    a. "all prisoners will be thoroughly searched by the arresting officer for weapons and contraband;"

    b. "the transporting officer will search the prisoner regardless of searches that may or may not have been conducted by the arresting officer;"

    c. "handcuff (double locked) all prisoners with their hands behind their backs and palms facing outward;"

    d. "the physical well-being of prisoners will be monitored during transit. Particular attention will be directed to persons reported or suspected of being under the influence of drugs and/or alcohol . . . [and] . . . when prisoners report or display symptoms of serious injury or illness they will be transported by ambulance to the nearest emergency room for treatment."

11. On or about June 27, 2018, at approximately 08:36, Destin was arrested by Defendant Charles Mays in Ripley County, Missouri, pursuant to a misdemeanor arrest warrant issued by the Associate Circuit Court of Ripley County.

12. Defendant Charles Mays then transported Destin to the Associate Circuit Court of Ripley County, transferring custody to Defendant Joey Bruener.

13. At the time of Destin's arrest and prior to his transport to the Associate Circuit Court of Ripley County, Defendant Charles Mays failed to thoroughly search Destin's person or others coming into contact with Destin for contraband.

14. On or about June 27, 2018, before 12:10, Destin, still under the custody of Defendant Joey Bruener, was loaded into Ripley County's prisoner transport van for transport to the Wayne County Jail, located in Greenville, Missouri. Destin was placed in the rear most seat of the transport van.

15. Prior to loading Destin into the transport van, Defendant Joey Bruener failed to thoroughly search Destin's person or others coming into contact with Destin for contraband.

16. Prior to loading Destin into the transport van, Defendant Joey Bruener failed to handcuff Destin's hands behind his back with palms facing outward.

17. On or about June 27, 2018, at approximately 12:10, Defendant Joey Bruener, driving the transport van, departed from the Associate Circuit Court of Ripley County headed to the Wayne County Jail. Defendant Joey Bruener drove upon US Highway 67 adjacent to Poplar Bluff Regional Medical Center located in Poplar Bluff, Missouri.

18. While en route, and prior to reaching Poplar Bluff, Missouri, Defendant Joey Bruener noticed Destin was unable to sit still.  Defendant Joey Bruener pulled onto the shoulder of US Highway 67, near the Missouri State Highway Patrol's Troop E Headquarters, in Poplar Bluff, Missouri.  Once off the road, Defendant Bruener yelled at Destin to sit still and demanded that he quit moving around.

19. While on the shoulder of US Highway 67, Jared Berry, a prisoner sitting beside Destin in the rear most seat, notified Defendant Joey Bruener that Destin had swallowed narcotics.  Jared Berry advised Defendant Joey Bruener that Destin needed help.  At this time, Destin was sweating profusely, was shaking, twitching and unable to sit still.  Defendant Joey Bruener did not transport Destin to the nearest emergency room or request an ambulance.  Instead, Defendant Joey Bruener continued to the Wayne County Jail.

20. Thereafter, Destin continued to sweat profusely, was shaking, twitching and unable to sit still. Defendant Joey Bruener again stopped the transport van on the shoulder of US Highway 67 at or near its intersection with Missouri State Highway FF.  Defendant Joey Bruener exited the vehicle, and told Destin he picked the wrong officer to mess with.  Defendant Joey Bruener then moved Destin to the center of the forward most passenger seat.  Defendant Joey Bruener did not transport Destin to the nearest emergency room or request an ambulance.  Instead, Defendant Joey Bruener continued to the Wayne County Jail.

21. While in the forward most passenger seat, Destin continued to sweat profusely.  Destin removed his shirt in an attempt to cool off.  Destin shook, twitched and was otherwise unable to sit still.

22. On or about June 27, 2018, at approximately 13:14, Defendant Joey Bruener arrived at the Wayne County Jail with Destin.

23. On or about June 27, 2018, the Wayne County Jail's admission and booking policies provided:

   a. "all inmates shall receive a medical screening . . . [and] . . . appropriate recommendations for the inmate shall be noted of any disposition or referral services needed."

   b. subjects with injuries or illness "shall be transported to a local emergency room for treatment prior to admission to the Wayne County Jail;"

   c. "drugged subjects . . .displaying bizarre behavior as a result of drugs or alcohol shall be treated as a medical emergency."

24. On or about June 27, 2018, and at approximately 13:15, Destin exited the transport van and entered the Wayne County Jail.  Defendant Tyler Rasberry described Destin's appearance as "breathing heavy and sweating fiercely."

25. Upon his arrival, Destin informed Defendants Tyler Rasberry and Joey Bruener that he had ingested methamphetamine and needed help.

26. On or about June 27, 2018, at approximately 13:16, Defendant Tyler Rasberry removed Destin's handcuffs. Thereafter, Defendants Tyler Rasberry and Joey Bruener forced Destin into a restraint chair, strapping Destin's arms to the restraint chair, a restraint device that is commonly referred to as the "Devil's Chair." At the time Destin was placed in the Devil's Chair, he continued to sweat profusely, shake, twitch, was unable to sit still and his pupils became increasingly dilated. Defendant Tyler Rasberry described Destin's appearance as "wild and crazy."

27. On or about June 27, 2018, at approximately 13:20, Destin stood up with his arms remaining strapped to the Devil's Chair. Defendant Joey Bruener, grabbed Destin by his left shoulder and forcibly slammed Destin back into a seated position. Defendant Joey Bruener yelled at Destin, telling Destin that he picked the wrong officer to mess with and that Destin was not in Colorado anymore. Defendant Joey Bruener told Destin he is now in Missouri, where we have rules.

28. On or about June 27, 2018, at approximately 13:24, with Destin twitching, shaking and unable to sit still, Defendant Tyler Rasberry placed additional restraints on Destin's person, specifically strapping his torso to the back of the Devil's Chair.

29. On or about June 27, 2018, at approximately 13:39, Defendant Joey Bruener left the Wayne County Jail in route to the Butler County Jail, located in Poplar Bluff, Missouri. Once more, Defendant Joey Bruener drove past Poplar Bluff Regional Medical Center.

30. On or about June 27, 2018, and prior to 14:22, Defendant Tyler Rasberry notified Defendant Dean Finch that Destin was dry heaving with foam coming out of his mouth. At some point prior to 14:22, Defendant Dean Finch requested the Wayne County Jail's on-call nurse practitioner to assess Destin. At 14:22, the nurse practitioner arrived at the Wayne County jail and checked Destin's vitals. Destin's blood pressure was 60/40. The nurse practitioner instructed Defendant Tyler Rasberry to immediately call for an ambulance.

31. On or about June 27, 2018, at approximately 14:25, Defendant Tyler Rasberry contacted the East Wayne County Ambulance District, requesting they assist Destin at the Wayne County Jail.  At 14:28, the East Wayne County Ambulance District EMTs arrived, finding Destin strapped to the Devil's Chair, unresponsive, having agonal respiration, dilated pupils, extremely diaphoretic, and foaming at the mouth. The EMTs removed Destin from the Devil's Chair and emergently performed an endotracheal intubation. Thereafter, the EMTs transported Destin to the Poplar Bluff Regional Medical Center.

32. On or about June 27, 2018, at approximately 15:34, Destin arrived at the Poplar Bluff Regional Medical Center.  His initial blood pressure was 105/130, with a pulse of 131, and temperature of 103.6. Destin was diagnosed with acute hypoxic respiratory failure and acute kidney failure.  Destin was then transferred to Southeast Hospital in Cape Girardeau, remaining there hospitalized until his death on June 30, 2018 from multiple organ failure.

33. Despite knowing of Destin's methamphetamine ingestion, and observing Destin twitch, seize, shake, kick, breath heavily, pupil dilation, sweat, and struggle, on June 27, 2018, from approximately 12:10 through 14:21, Defendants failed to treat Destin's condition as a medical emergency, failed to perform any medical screening, failed to check Destin's vital signs, such as a body temperature, pulse rate, blood pressure or oxygen saturation levels.

34. If Defendants had treated Destin's condition as a medical emergency, and provided immediate medical attention, Destin's condition would have stabilized through using various mechanisms which are routinely used on methamphetamine overdose patients such as sedatives, vasodilators, active cooling and whole bowel irrigation.

35. Defendants observed or were informed of, and acknowledged, Destin's increasingly distressed mental and physical state.  Defendants nevertheless denied Destin reasonable and necessary medical care for his serious medical needs, medical needs which ultimately caused his death.

36. Destin's serious medical need was evident and of such a degree that injury and death was reasonably foreseeable. Destin's condition was so obvious that even a lay person would easily recognize the necessity for medical attention.

### FIRST CLAIM FOR RELIEF: Delay and Denial of Adequate Medical Care
### (*42 U.S.C. §§ 1983, 1985, 1986 & 1988*)

37. Plaintiff realleges all previous paragraphs as if more fully set forth herein.

38. Destin was entitled to be free from cruel and unusual punishment pursuant to the United States Constitution. This protection includes a right to adequate and timely medical care. Failure to provide adequate and timely medical care amounts to deliberate indifference to a detainee's wellbeing and constitutes cruel and unusual punishment. In this case Defendants acted with deliberate indifference in failing to respond to Destin's serious medical needs. Defendants had repeated opportunities to respond with appropriate measures pursuant established standards and procedures but chose not to do so.

39. While acting under color of the laws, statutes, ordinances and regulations of the State of Missouri, Defendants, individually and collectively:

   a. Were aware that Destin faced a serious medical need and a substantial risk of harm, including drug overdose or withdrawal from drugs as time evolved;

   b. Acknowledged and ignored Destin's need for medical treatment;

   c. Did not provide any medical evaluation of Destin until June 27, 2018 at 14:22, and at such time as Destin's health had deteriorated to a point where he was foaming at the mouth and with a blood pressure of 60/40.

   d. Did not intervene to stop his medical health decline;

   e. Failed to refer Destin to the care of EMTs immediately when knowing he was suffering from drug intoxication;

    f. Failed to transport Destin to the closest medical facility when they knew he was suffering from drug intoxication;

    g. Failed to follow their own guidelines, policies and procedures, including:

        i. Failing to monitor Destin during transport;

        ii. Failing to cause Destin to be transported by ambulance to the nearest emergency room for treatment when it was reported, and Destin's symptoms displayed, serious drug intoxication;

        iii. Failing to medically screen Destin on his entry into the Wayne County Jail;

        iv. Failing to transport Destin to a local emergency room for treatment, and;

        v. Failing to treat Destin as suffering a medical emergency.

    h. Denied Destin the opportunity to be taken to a hospital, evaluated and treated by medically trained professionals;

    i. Failed to respond to Destin's seizures;

    j. Failed to respond to Destin's unconscious state in an appropriate and timely manner, and;

    k. Were deliberately indifferent to Destin's medical need and risk of harm.

40. All Defendants' conduct was well defined by law and each Defendant knew or reasonably should have known that their conduct would fall well below the standard prescribed by law.

41. Defendants' action and/or inaction caused harm or contributed to cause harm to Destin, including his death.

42. Sympathomimetic toxicity suffered by Destin puts a person at risk for seizure, hemorrhagic stroke, myocardial infarction, heart failure, dysrhythmias, rhabdomyolysis and renal failure. This became a "time bomb" for Destin, and required immediate and regular monitoring together with early transport to a capable medical facility.

43. Destin should have been evaluated by medical professionals for a toxic sympathomimetic ingestion. His vital signs should have been taken to measure the level of hypertension and tachycardia which may have required aggressive treatment to mitigate end-organ damage, particularly the brain, heart and kidneys. Destin's hyperkinetic activity put him at risk for hyperthermia, rhabdomyolysis and electrolyte perturbations. A standard of care response by an emergency department would initially use benzodiazepines to sedate Destin and quell the sympathomimetic surge. For hypertension, an emergency department would use intravenous vasodilators to control Destin's blood pressure. An emergency department would actively cool Destin to maintain normothermia. And, an emergency department would continuously monitor for dysrhythmias.

44. The standard of care response by an emergency department would require blood and urine toxicology screens. For suspected on-going absorption from the gastrointestinal tract, and emergency department would perform a whole bowel irrigation. Body packers are taken to the operating room for a laparotomy to surgically remove the drugs.

45. Because Ripley County and Wayne County personnel were improperly trained to detect, monitor and manage methamphetamine use, they categorize everyone the same and ignore life threatening signs and symptoms even when a common sense assessment would dictate at least a call to the staff nurse, on-call nurse practitioner, or paramedics.

46. Defendants knew of the substantial risk that Destin would suffer serious injury and death, but Defendants intentionally refused and failed to take reasonable measures to assist Destin's serious medical need.

47. Defendants will admit that they would have transported Destin to the hospital immediately if they could do it again.

48. As a result of Defendants' actions and inactions, Destin suffered a long death strapped to the Devil's Chair knowing that none of the officers would help him. Because of Defendants' conduct, Destin

was forced to endure the effects of toxic drug poisoning, including hallucinations, uncontrolled behavior, pain, distress, fear, humiliation from the deputies, and ultimately dying, all to his damage.

49. As a result of Defendants' actions and inactions, Sherry suffered pecuniary losses, funeral expenses, the reasonable value of the Destin's services, consortium, companionship, comfort, instruction, guidance, counsel, training and support.

50. Defendants' acts and omissions as referenced in detail above show Defendants were malicious and recklessly indifferent to a highly unreasonable risk of harm to Destin, and a malicious and reckless indifference to the health, safety and welfare of Destin, Sherry and others similarly situated, entitling Plaintiff to recover punitive damages from Defendants in an amount sufficient to punish Defendants and to protect others from like conduct.

51. Plaintiff is entitled to a reasonable attorney fee, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

**WHEREFORE** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against all named Defendants; award compensatory or nominal damages in an amount that is fair and reasonable; award him punitive damages, attorney's fees, expert fees, costs of suit, and any other and further relief as the Court deems just and proper.

### SECOND CLAIM FOR RELIEF: Excessive Force
### (*42 U.S.C. §§ 1983, 1985, 1986 & 1988*)

52. Plaintiff realleges all previous paragraphs as if more fully set forth herein.

53. Destin, a pretrial detainee, was entitled to be free from the use of force that was unnecessary to quell criminal activity, threat of self-harm, threat of harm to property, or threat of harm to others.

54. While acting under color of the laws, statutes, ordinances and regulations of the State of Missouri, Defendant Joey Bruener, maliciously, sadistically, and without an objective justification or a subjective

justification, used force and excessive force against Destin.  Specifically, Defendant Joey Bruener grabbed Destin by his left shoulder and forcibly slammed Destin into a seated position.  Defendant Joey Bruener yelled at Destin, telling Destin that he picked the wrong officer to mess with and that Destin was not in Colorado anymore.  Defendant Joey Bruener told Destin he was now in Missouri, where we have rules.

55. Defendant Joey Bruener's use of force and excessive force caused Destin to suffer physical and psychological injury.  Destin was forced to suffer a long death strapped to the Devil's Chair, knowing that if he attempted to resist that death, officers would not only refuse help, but would further use force to assure its outcome.

56. Defendant Joey Bruener's acts and omissions show Defendant Joey Bruener was malicious and recklessly indifferent to a highly unreasonable risk of harm to Destin, and a malicious and reckless indifference to the health, safety and welfare of Destin, Sherry and others similarly situated, entitling Plaintiff to recover punitive damages from Defendant Joey Bruener in an amount sufficient to punish and to protect others from like conduct.

57. Plaintiff is entitled to a reasonable attorney fee, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

**WHEREFORE** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant Joey Bruener and Defendant Ripley County; award compensatory or nominal damages in an amount that is fair and reasonable; award him punitive damages, attorneys fees, expert fees, costs of suit, and any other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF: Failure to Supervise and Train
### (*42 U.S.C. §§ 1983, 1985, 1986 & 1988*)

58. Plaintiff hereby alleges all previously alleged paragraphs as if more fully set forth herein.

59. Defendants Mike Barton and Dean Finch were supervisors during the incident alleged herein, and Defendants Ripley County, Wayne County, Mike Barton and Dean Finch had a duty to properly supervise, manage and train officers, particularly in training those officers the proper methods of performing a thorough search incident to arrest, performing a thorough search prior to transport, restraining detainees in transport with their hands behind their back and palms facing outward, identifying drug overdoses, understanding the effects of methamphetamine, identification of methamphetamine overdoses, when medical attention was needed, when to order medical personnel to the scene, when to transport prisoners to the local emergency department, mistreatment of detainees by officers, the proper use of the Devil's Chair, taking appropriate action when an inmate reports another inmate ingested methamphetamine and needs help, and taking appropriate action when Destin reported he ingested methamphetamine and needed help.

60. Defendants Ripley County, Wayne County, Mike Barton and Dean Finch failed to properly supervise, manage and train their subordinates, resulting in the abuse, neglect and damages alleged herein, including, but not limited to Destin's death.

61. Defendants Ripley County, Wayne County, Mike Barton and Dean Finch in failing to supervise, manage and train deputies, permitted a culture of unconstitutional treatment of detainees, particularly of Destin. The individual deputies were allowed to neglect, mistreat, criticize, mock and cause Destin's harm and death without repercussions. This failure to supervise, manage and train was a moving force and but-for cause of the unconstitutional treatment and abuse of Destin, including his death.

62. Defendants Ripley County, Wayne County, Mike Barton and Dean Finch made no personnel changes, nor did they make any changes to their policies and procedures that were not followed, as a result of the actions and inactions described herein, including but not limited to, the ignoring, neglecting, mocking, mistreatment, deprivation of medical care, all of which was a moving force and but-for cause of the unconstitutional treatment and abuse of Destin, including his death.

63. To the contrary, Defendants Wayne County, Ripley County, Mike Barton and Dean Finch have a policy, custom or procedure which allows for the continuing, widespread and persistent abuse and neglect of detainees, was a moving force and but-for cause of the unconstitutional treatment and abuse of Destin, including his death. The ability of the officers to behave in the manner they did, without repercussions, despite their actions being videotaped and an investigation undertaken, indicates a culture and philosophy where cruel, neglectful and disrespectful treatment of citizens is permitted, if not condoned, supported and rewarded. The conduct by each individual Defendant has been fully endorsed and ratified by Defendants Ripley County, Wayne County, Mike Barton and Dean Finch.

64. This culture was a moving force and but-for cause of the unconstitutional treatment and abuse of Destin, including his death. The evidence of this culture is the videotape itself where officers neglect, mistreat, criticize and refuse medical treatment to Destin who is clearly suffering from a drug overdose who poses no threat and offers no resistance. The fact that these actions were reviewed and no action was taken solidifies and reinforces the belief within the officers that they are above the law.

65. As a result of Defendants' actions and inactions, Destin suffered a long death strapped to the Devil's Chair knowing that none of the officers would help him. Because of Defendants' conduct, Destin was forced to endure the effects of toxic drug poisoning, including hallucinations, uncontrolled behavior, pain, distress, fear, humiliation from the deputies, and ultimately dying, all to his damage.

66. As a result of Defendants' actions or inactions, Sherry suffered pecuniary losses, funeral expenses, the reasonable value of the Destin's services, consortium, companionship, comfort, instruction, guidance, counsel, training and support.

67. Defendants' acts and omissions as referenced in detail above show Defendants were malicious and recklessly indifferent to a highly unreasonable risk of harm to Destin, and a malicious and reckless indifference to the health, safety and welfare of Destin, Sherry and others similarly situated, entitling

Plaintiff to recover punitive damages from Defendants in an amount sufficient to punish Defendants and to protect others from like conduct.

68. Plaintiff is entitled to a reasonable attorney fee, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

**WHEREFORE** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against all named Defendants; award compensatory or nominal damages in an amount that is fair and reasonable; award him punitive damages, attorney's fees, costs of suit, expert fees, and any other and further relief as the Court deems just and proper.

### FOURTH CLAIM FOR RELIEF: Negligence and Wrongful Death
(*Missouri Common Law and Mo. Rev. Stat. § 537.080*)

69. Plaintiff realleges all matters previously alleged as if more fully set forth herein.

70. Defendants' acts and omissions as specified in the paragraphs above created a foreseeable risk to Destin of injury and death.

71. Defendants, individually, and as officers and employees, owed a duty of care to provide humane conditions of confinement, ensuring that detainees receive adequate medical care, and taking reasonable measures to guarantee the safety of the inmates.

72. Defendants breached these duties of care, and were thus negligent.

73. As a result of Defendants' breach of these duties of care, Destin suffered a long death strapped to the Devils Chair knowing that none of the officers would help him.  Because of Defendants' conduct, Destin was forced to endure the effects of toxic drug poisoning, including hallucinations, uncontrolled behavior, pain, distress, fear, humiliation from the deputies, and ultimately dying.

74. As a result of Defendants' breach of these duties of care, Sherry suffered pecuniary losses, funeral expenses, the reasonable value of the Destin's services, consortium, companionship, comfort, instruction, guidance, counsel, training and support.

75. Defendants' acts and omissions as referenced in detail above show Defendants were malicious, recklessly indifferent, outrageously indifferent, and otherwise constitutes a conscious disregard to a highly unreasonable risk of harm to Destin, and a malicious, reckless, and conscious indifference to the health, safety and welfare of Destin, Sherry and others similarly situated, entitling Plaintiff to recover damages for aggravating circumstances from Defendants in an amount sufficient to punish Defendants and to protect others from like conduct.

**WHEREFORE** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against all named Defendants; award compensatory or nominal damages in an amount that is fair and reasonable; award him damages for aggravating circumstances, attorney's fees, expert fees, costs of suit, and any other and further relief as the Court deems just and proper.

Respectfully submitted,

KENNEDY, KENNEDY, ROBBINS & YARBRO, LC


 /s/ Douglas R. Kennedy
Douglas R. Kennedy     #34167
Christopher L. Yarbro   #56659
1165 Cherry Street
P. O. Box 696
Poplar Bluff, MO 63902
Telephone:    (573) 686-2459
Telefax:      (573) 686-7822
doug@kkrylawfirm.com
chris@kkrylawfirm.com

**ATTORNEYS FOR PLAINTIFF**